**Joan C. BAEZ, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE et al.**

**No. 79–1881.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1980.

Decided Aug. 25, 1980.

Martin S. Echter, Washington, D. C., with whom Ira M. Lowe, Washington, D. C., was on brief for appellant.

Douglas N. Letter, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief for appellees. Freddi Lipstein, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellees.

Before BAZELON, Senior Circuit Judge, WILKEY and EDWARDS, Circuit Judges.

WILKEY, Circuit Judge:

This case arises under the Freedom of Information Act (FOIA).[1] Appellant re-

1. 5 U.S.C. § 552 (1976).

quested the Federal Bureau of Investigation (FBI or Bureau) to provide her with all information referring to her in files maintained under her name or under the names of other individuals or organizations. The Government released much of the information involved, but withheld certain materials pursuant to various exemptions to the FOIA. The district court granted summary judgment to the Government on the grounds that the materials at issue were exempt from disclosure under Exemptions 1, 3, 7(C), and 7(D) of the FOIA.[2] On this appeal appellant contests the district court's rulings with respect to Exemptions 1, 7(C), and 7(D).

This case presents many of the same issues as *Lesar v. United States Department of Justice*,[3] decided 15 July 1980. For reasons set forth in that decision and for reasons further developed below, we affirm in all respects.

## I. BACKGROUND

On 27 April 1976 appellant requested the FBI to produce "[a]ll information or other references or materials, in whatever form or manner, referring to or directly or indirectly concerning Joan C. Baez whether filed under her name or obtainable by searching through other files or materials."[4] Because the Bureau was unable to process appellant's request in a timely man-

ner, appellant brought suit in the United States District Court on 18 October 1976 to compel disclosure of the records. On 18 February 1977 the district court granted the Government's motion to stay the proceedings pending the completion of the administrative processing of appellant's request.

In response to appellant's request the FBI searched both its files bearing appellant's name, so–called "main files," as well as files maintained on organizations and individuals other than appellant in which appellant's name might appear, so–called "see reference files." After completing its search of the main files, the FBI by letter dated 21 March 1977 released 365 pages of materials to appellant. Portions of these documents were withheld pursuant to various Exemptions to the FOIA.[5] The Government later released an additional 145 pages as a result of appellant's administrative appeal, but continued to withhold certain materials from the main files relying on Exemptions 1, 3, 7(C), 7(D), and 7(E) of the FOIA. Two affidavits were submitted to the district court explaining the reasons for the denial.[6]

In April 1978 appellant was notified that the FBI had completed its search for references to her appearing in the "see reference" files. The Government released 1,075 pages to appellant, with portions withheld pursuant to Exemptions 1, 7(C), 7(D), and 7(E) of the FOIA.[7] The Government filed

---

**2.** *Id.* § 552(b)(1), (3), (7)(C), (7)(D).

**3.** 636 F.2d 472 (D.C. Cir. 1980).

**4.** Plaintiff's FOIA Request to Clarence Kelley, Director of the FBI (27 Apr. 1976), *reprinted in* Joint Appendix (J.A.) at 7. Appellant also sought "any reasonably segregable portion of any items . . . otherwise consider[ed] exempt from disclosure," and "any instructions concerning Joan C. Baez," "any subjective evaluations concerning her," "and the general nature of the source of each item of information." *Id.*

**5.** 5 U.S.C. § 552(b)(1), (2), (7)(C), (7)(D), 7(E) (1976). *See* Letter from Clarence M. Kelley, Director of the FBI, to Ira M. Lowe, Attorney for Appellant (21 Mar. 1977), *reprinted in* J.A. at 23. Appellant also was informed that she had never been the subject of an electronic surveillance conducted by the FBI. *See id.* at 2, J.A. at 24.

**6.** *See* Affidavit of FBI Special Agent John C. Murphy (3 Oct. 1977) (discussing all of the exemptions to the FOIA upon which the Bureau relied), *reprinted in* J.A. at 37; Affidavit of FBI Special Agent Gerald A. James (30 Sept. 1977) (discussing only those documents withheld as classified under Exemption 1 of the FOIA), *reprinted in* J.A. at 53. By letter dated 26 September 1978 the FBI released certain information previously classified and withheld pursuant to Exemption 1 of the FOIA.

**7.** *See* Letter from Allen H. McCreight, Chief of FOI/Privacy Act Branch, FBI, to Ira M. Lowe, Attorney for Appellant (27 June 1978), *reprinted in* J.A. at 67. The Bureau also located certain documents that were generated by the Naval Investigative Service. These documents were referred to that Service for processing of appellant's FOIA request, and portions were released to appellant with deletions. *See* Letter from L. E. Connell, Director, Naval Investigative Service, to Ira M. Lowe, Attorney for

two affidavits with the district court in support of the claimed exemptions.[8]

During its search of its files for appellant, the Bureau also located nine documents generated by the Department of the Army (Army) that contained references to appellant, and these documents were referred to the Army for processing. The Army released portions of the documents to appellant, but withheld other segments and certain of the documents in their entirety, relying on Exemptions 1, 7(C), and 7(D) of the FOIA.[9] While the case was pending on administrative appeal, a new Executive Order governing the classification of documents, Executive Order No. 12,065,[10] went into effect. Accordingly, the Army reassessed the documents withheld as classified under the standards of that Order and determined that the materials still warranted classification.[11]

After exhausting her administrative appeals, appellant moved for summary judgment and *in camera* review of the documents on 7 November 1978, and on 1 December 1978 the Government filed its cross-motion for summary judgment with supporting affidavits. Also, on 21 June 1979 the Government filed additional affidavits with the district court, one of which indicated that the FBI had reexamined all of the documents withheld as classified under the classification criteria established by the new Executive Order. The official averred that the documents still merited classification under the standards of Executive Order No. 12,065.[12]

On 25 June 1979 the district court held a hearing on the cross-motions for summary judgment and, in a ruling rendered from the bench, the district court found that Exemptions 1, 3, 7(C), and 7(D) of the FOIA were properly and well taken. In response to appellant's Motion for Clarification and A More Definite Statement of Reasons, the court issued a brief written statement clarifying its reasons for its ruling.

This appeal followed. Appellant contends that the district court erred with respect to its rulings on Exemptions 1, 7(C), and 7(D). Also, appellant claims that the trial judge failed to provide her with an adequate statement of his reasons. We do not find these contentions persuasive.

## II. ANALYSIS

### A. *Exemption 1*

Exemption 1 protects against disclosure matters which are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such an Executive order."[13] At issue under this exemption are twenty-six FBI documents, obtained from both the main files and from the see reference files, and four Army documents.

All of the Army documents and some of the FBI documents initially were classified at the time of origination of these materials, and after appellant's FOIA request was received, these documents were reviewed under the substantive and procedural criteria of Executive Order No. 11,652[14] to de-

---

Appellant (30 June 1978), *reprinted in* J.A. at 70; Affidavit of William C. O'Riley, Naval Investigative Service Coordinator (28 Aug. 1978), *reprinted in* J.A. at 73. Appellant does not challenge the exemptions claimed by the Naval Investigative Service on this appeal. *See* Brief for Appellant at 9.

**8.** *See* Second Affidavit of FBI Special Agent John C. Murphy (12 Sept. 1978), *reprinted in* J.A. at 79; Affidavit of FBI Special Agent John J. Pramik (29 Sept. 1978), *reprinted in* J.A. at 85.

**9.** *See* Affidavit of Thomas F. Conley, Chief of FOI/Privacy Office, United States Intelligence and Security Command (30 Nov. 1978), *reprinted in* J.A. at 95. On this appeal, appellant does not contest the Army's use of Exemptions 7(C) and 7(D) of the FOIA.

**10.** Exec.Order No. 12,065, 3 C.F.R. 190 (1979).

**11.** Affidavit of Steve C. Vaughn, Assistant to the General Counsel of the Department of the Army (23 Jan. 1979) (incorporating Letter from Jill Wine-Volner, Army General Counsel, to Ira M. Lowe, Attorney for Appellant (16 Jan. 1979)), *reprinted in* J.A. at 130.

**12.** *See* Affidavit of FBI Special Agent Martin Wood (18 June 1979), *reprinted in* J.A. at 139.

**13.** 5 U.S.C. § 552(b)(1) (1976).

**14.** Exec.Order No. 11,652, 3 C.F.R. 375 (1973) (superseded).

termine whether they still required classification. Several of the FBI documents, however, first were classified with reference to the standards set forth in Executive Order No. 11,652 not at the time of origination of these materials but only after appellant submitted her FOIA request. Supporting affidavits explaining the reasons for classification of all the materials were filed with the district court.[15]

Subsequently Executive Order No. 11,652 was replaced by Executive Order No. 12,065.[16] Both the FBI and the Army reevaluated all documents withheld under the classification standards established by Executive Order No. 12,065. The Army and the Bureau determined that the materials warranted classification at the same level under the substantive terms of the new Executive Order. In addition all of the documents were marked to conform to the procedural criteria of Executive Order No. 12,065. Supporting affidavits again were submitted to the district court.[17]

### 1.

█ As a preliminary issue appellant contends that those FBI documents which were classified originally under Executive Order No. 11,652 after appellant's FOIA request was received do not qualify for protection under Exemption 1. The National Security Council directive implementing Executive Order No. 11,652 provides for classification at the time of origination of the documents.[18] In view of our decision in *Halperin v. Department of State*,[19] appellant contends, the failure to conform to this proce-

dural criterion necessitates a remand to the district court for *in camera* review and release of the documents unless the agency can show that exceptionally grave damage to the national security would result.

Our response is twofold. First, even assuming that Executive Order No. 11,652 were the relevant Executive Order for purposes of assessing the agency's classification decision, release of the documents or remand to the district court for *in camera* inspection is neither mandated by our decision in *Halperin* nor appropriate. More important, Executive Order No. 12,065 and not Executive Order No. 11,652 states the relevant criteria for purposes of reviewing the classification determination for all documents involved in this appeal–and that Executive Order expressly provides for classification at times later than the origination of a particular document.

As we indicated in *Lesar v. United States Department of Justice*,[20] *Halperin* involved not only a failure to classify the materials at the time of origin but also a total disregard on the part of the agency of the substantive standards set forth in Executive Order No. 11,652. Thus we stated in *Lesar* that *Halperin* did not resolve explicitly the question of whether the failure to classify documents at the date of origin, standing alone, required a remand to the district court for *in camera* inspection and possible release thereafter.[21] We recognized that although procedural and substantive conformity to the relevant Executive Order is required by the terms of the statute, the consequences of a particular procedural defect may differ.[22] A procedural

---

15. *See* Affidavit of FBI Special Agent Gerald A. James (30 Sept. 1977) (main file documents), *reprinted in* J.A. at 53; Affidavit of FBI Special Agent John J. Pramik (29 Sept. 1978) (see reference materials), *reprinted in* J.A. at 85; Affidavit of Thomas F. Conley, Chief of FOI/Privacy Office, United States Intelligence and Security Command (30 Nov. 1978) (Army documents), *reprinted in* J.A. at 95.

16. Exec.Order No. 12,065, 3 C.F.R. 190 (1979). Executive Order No. 12,065 went into effect on 1 December 1978.

17. ·*See* Affidavit of FBI Special Agent Martin Wood (18 June 1979), *reprinted in* J.A. at 139; Affidavit of Steve C. Vaughn, Assistant to the General Counsel of the Department of the Army (23 Jan. 1979) (incorporating Letter from

Jill Wine–Volner, Army General Counsel, to Ira M. Lowe, Attorney for Appellant (16 Jan. 1979)), *reprinted in* J.A. at 130.

18. *See* National Security Council Directive of 17 May 1972 Governing the Classification, Downgrading, Declassification and Safeguarding of National Security Information IV(A), 37 Fed.Reg. 10,053, 10,056–57 (1972).

19. 565 F.2d 699, 703–07 (D.C.Cir. 1977).

20. 636 F.2d 472 (D.C. Cir. 1980).

21. *Id.*, at 484.

22. *Id.* at 484–485.

defect, we observed, would not mandate the outright release of the documents, but it may be of such importance to implicate the agency's overall classification decision, necessitating a remand to the district court for *in camera* review. Alternatively, we noted, the defect may be insignificant, affecting not at all the validity of the agency's classification determination. We concluded that in the case of a failure to classify materials at the time of origin, if the affidavits submitted revealed that the substantive standards of the Executive Order had been followed and if no evidence of agency bad faith existed, a remand to the district court was neither necessary nor appropriate.[23] From the affidavits already filed, the district court could ascertain that the documents warranted protection against disclosure, and no further inquiry would be indicated.

Appellant speculates that an agency deliberately could fail to classify a document at the time of origination under Executive Order No. 11,652–even though such documents warranted classification at that time–to delay the eventual release of the materials under the automatic declassification schedules. Appellant has provided no evidence in the record to support such a charge in this case. General allegations of agency bad faith in other instances–either hypothetical or actual–will not undermine the veracity of the agency's affidavit submitted in support of its classification decision.[24] Thus even if Executive Order No. 11,652 were the governing Executive Order with respect to the documents in dispute, we would find no merit to appellant's argument that the failure to classify certain of the documents when these were first generated necessarily required a remand to the district court.[25]

2.

The relevant Executive Order for purposes of assessing the agency's classification decision on this appeal, however, is not Executive Order No. 11,652, but rather the Executive Order currently in force, Executive Order No. 12,065.[26] In this case Executive Order No. 11,652 was supplanted by Executive Order No. 12,065 while the case was pending before the district court. Both the Army and the FBI reevaluated the suitability of all documents requested for classified treatment under both the substantive and procedural criteria of the new Executive Order.[27]

■ Normally, when an agency receives a FOIA request, it may choose to review the documents already marked as classified to determine whether these materials still warrant classification.[28] In many instances this reassessment may be to the advantage of the requester because the agency may find that the materials no longer require protection. In other cases, the agency may determine that its initial classification as-

---

**23.** *Id.* at 485.

**24.** *See, e. g., Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("sufficiency of [agency] affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases"; footnote omitted), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

**25.** Appellant also claims that Executive Order No. 10,501, 3 C.F.R. 306 (1972) (superseded), the governing Executive Order prior to the issuance of Executive Order No. 11,652, requires classification at the time of origin and that this Order governs certain of the FBI documents at issue in this case. We need not reach the merits of appellant's argument that Executive Order No. 10,501 requires classification at the time of origin because that Order is not relevant to any of the documents in dispute. Al-

though certain of the FBI documents were generated when Executive Order No. 10,501 was in force, no materials were actually classified under that Order. It is the Executive Order in effect when the agency makes its classification decision and not the Executive Order in force when the documents first are compiled that governs.

**26.** Exec.Order No. 12,065, 3 C.F.R. 190 (1979).

**27.** *See* Affidavit of FBI Special Agent Martin Wood (18 June 1979), *reprinted in* J.A. at 139; Affidavit of Steve C. Vaughn, Assistant to the General Counsel of the Department of the Army (23 Jan. 1979) (incorporating Letter from Jill Wine–Volner, Army General Counsel, to Ira M. Lowe, Attorney for Appellant (16 Jan. 1979)), *reprinted in* J.A. at 130.

**28.** *See, e. g.,* text accompanying note 14 *supra.*

sessment still holds. Or, the agency may find that changed international and domestic circumstances require designation of a particular document at a higher level of classification. For example, documents pertaining to Iran or Afghanistan now may require the utmost secrecy because of the crises in those countries, even though these same documents may not have warranted such protection only a short time ago. Thus the agency must be permitted to review its initial classification decision whenever a FOIA request is received. This is consistent with the purpose underlying Exemption 1—ensuring that the materials withheld are only those which could be detrimental to national security interests if released.

■ Similarly, in cases such as this one, in which the governing Executive Order changes while the case is still under consideration in the trial court, the agency should be permitted to reassess its classification determination under the standards of the new Executive Order. This again ensures that the documents withheld are only those that would pose the requisite harm to the national security.

These principles conform to our decision in *Lesar v. United States Department of Justice.*[29] In that case we held that review of the classification of a particular document should be made under the substantive and procedural criteria of the Executive Order in effect at the time the agency makes its ultimate classification determination.[30] In Baez's case both the Army and the Bureau made their final classification assessments under the terms of Executive Order No. 12,065. And, with respect to the date of classification, Executive Order No. 12,065 expressly provides for classification at times later than that of the origin of the document,[31] thus during whatever procedural flaw may have existed under the terms of Executive Order No. 11,652.

### 3.

■ We turn next to the issue of whether the documents were classified in accordance with the substantive terms of Executive Order No. 12,065. All of the documents in dispute were classified as either "Secret" or "Confidential." Executive Order No. 12,065 states that materials are to be classified as "Secret" if release of the information "reasonably could be expected to cause serious damage to the national security,"[32] and as "Confidential" if release of the information "reasonably could be expected to cause identifiable damage to the national security."[33] Executive Order No. 12,065 also provides that information may not be considered for classification unless it concerns one of seven categories:

(a) military plans, weapons, or operations;

(b) foreign government information;

(c) intelligence activities, sources or methods;

(d) foreign relations or foreign activities of the United States;

(e) scientific, technological, or economic matters relating to the national security;

(f) United States Government programs for safeguarding nuclear materials or facilities; or

(g) other categories of information which are related to national security and which require protection against unauthorized disclosure as determined by the President by a person designated by the President pursuant to Section 1–201, or by an agency head.[34]

The standard that a court must follow in reviewing the agency's classification decision under Executive Order No. 12,065, then, is whether the information fits within one of the seven enumerated categories and whether unauthorized disclosure of the material reasonably could be expected to cause the requisite potential harm.[35]

---

29. 636 F.2d 472 (D.C. Cir. 1980).

30. *See id.*, slip op. at 12–14.

31. *See* Exec.Order No. 12,065, § 1–606, 3 C.F.R. 190, 194–95 (1979).

32. *Id.* § 1–103, 3 C.F.R. 190, 191 (1979).

33. *Id.* § 1–104, 3 C.F.R. 190, 191 (1979).

34. *Id.* § 1–301, 3 C.F.R. 190, 193 (1979).

35. *See, e. g., Lesar v. United States Dep't of Justice,* 636 F.2d 472, at 481 (D.C. Cir. 1980); *Hayden v. National Security Agency/Central Security Serv.,* 608 F.2d 1381, 1387 (D.C. Cir.

As we have held repeatedly in other national security cases, in making this assessment the court must conduct a *de novo* review of the agency's classification decision, with the burden on the agency of demonstrating proper classification.[36] The court is to afford the agency the opportunity to meet this burden through the submission of affidavits that describe with reasonably specific detail the nature of the documents at issue and the justification for nondisclosure.[37] The courts must accord "substantial weight" to these affidavits.[38] That is, if the description in the affidavits demonstrates that the information logically falls within the claimed exemption and if the information is neither controverted by contrary evidence in the record nor by evidence of agency bad faith, then summary judgment for the Government is warranted.[39] The court need not review the documents *in camera* unless the affidavits are inadequate for a reasoned *de novo* determination.[40]

In this instance the FBI official stated that classification was imposed on FBI documents obtained from files maintained on appellant to protect information that was provided by a foreign intelligence agency or that would reveal cooperation with a foreign intelligence agency. In addition, the official averred that certain portions of these documents were classified to avoid the disclosure of an intelligence method or a confidential source and to avoid the release of the FBI's specific interest in a foreign diplomatic establishment.[41] Classification was also imposed on certain materials found in FBI files maintained on individuals other than appellant to avoid disclosing intelligence sources or methods, to avoid revealing the FBI's relationship with a foreign intelligence agency which had requested confidentiality, and to protect the FBI's interest in a specific foreign relations matter.[42]

The affidavit detailed at length the type of harm that would result from the disclosure of the materials.[43] First, the FBI offi-

---

1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

**36.** *E. g., Lesar v. United States Dep't of Justice*, 636 F.2d 472 at 480–481 (D.C. Cir. 1980); *Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

**37.** *E. g., Lesar v. United States Dep't of Justice*, 636 F.2d 472 at 481 (D.C. Cir. 1980); *Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d 1381, 1386–87 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Ray v. Turner*, 587 F.2d 1187, 1194–95 (D.C. Cir. 1978); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977).

**38.** *E. g.*, S.Rep.No. 1200, 93d Cong., 2d Sess. 12 (1974).

**39.** *See, e. g., Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980); *Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d 1381, 1386–87 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Ray v. Turner*, 587 F.2d 1187, 1194–95 (D.C. Cir. 1978); *Weissman v. CIA*, 565 F.2d 692, 696–98 (D.C. Cir. 1977).

**40.** *E. g., Lesar v. United States Dep't of Justice*, 636 F.2d 472 at 481 (D.C. Cir. 1980); *Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

**41.** *See* Affidavit of FBI Special Agent Gerald A. James (30 Sept. 1977), *reprinted in* J.A. at 53; Affidavit of FBI Special Agent Martin Wood (18 June 1979), *reprinted in* J.A. at 139. The affidavit of Gerald A. James describes the main file documents withheld as classified pursuant to former Executive Order No. 11,652. In his affidavit, Special Agent Wood stated that the documents described in Special Agent James' affidavit also warranted classification under Executive Order No. 12,065.

**42.** *See* Affidavit of FBI Special Agent John J. Pramik (29 Sept. 1978), *reprinted in* J.A. at 85; Affidavit of FBI Special Agent Martin Wood (18 June 1979), *reprinted in* J.A. at 139. The affidavit of Special Agent Pramik describes the "see reference" documents withheld as classified pursuant to former Executive Order No. 11,652. In his affidavit, Special Agent Wood averred that the documents described in Special Agent Pramik's affidavit also warranted classification under Executive Order No. 12,065. Special Agent Wood also explained that three other documents, which inadvertently were not described in either the James or Pramik affidavits, were withheld.

**43.** After examining all of the FBI documents withheld as classified under the criteria established by Executive Order No. 12,065, Special Agent Wood agreed with Special Agent Pramik's characterization of the potential damage to the national security that would result from the

cial explained that disclosure of confidential intelligence sources would destroy the usefulness of these sources for gathering further intelligence, would discourage others from becoming active providers of intelligence, and would subject these individuals to the risk of retaliation.[44] Second, the affiant averred that .materials provided by foreign intelligence agencies or pertaining to cooperative arrangements between the FBI and the foreign entities were classified because the foreign agencies involved specifically had requested such secrecy. A failure to honor the agreements to maintain the confidentiality of this information, the official explained, could be expected to dissuade foreign agencies from entrusting additional information, to the Bureau.[45] Third, the classifying officer stated that information concerning intelligence methods and practices of the Bureau could not be made public without completely destroying the usefulness of these , techniques for future intelligence operations.[46] Finally, with respect to foreign matters of investigative interest to the Bureau, the official explained that "[t]he acknowledgement of the details or specific targets and methods described in these documents could lead to the disruption of foreign relations by precipitating possible diplomatic confrontations which could damage national security."[47]

We think that the affidavits indicate a logical nexus between the information at issue and the claimed exemption.[48] First, the information clearly fits within one of three categories enumerated in Executive Order No. 12,065: "foreign government information," "intelligence activities, sources or methods," or "foreign relations or foreign activities of the United States."[49] Second, contrary to appellant's contention, we think that the affidavits depict with reasonably specific detail the nature of the documents at issue and the harm that could be expected to occur. The release of further detail could well impair legitimate secrecy needs and thus defeat the purpose of the exemption.

A more particularized indication of the type of intelligence sources involved reasonably could be expected to destroy their particular usefulness for future intelligence gathering and even subject these individuals to some risk of retaliation. As the Supreme Court observed in *Snepp v. United States*: "The continued availability of these . . . sources depends upon the [agency's] ability to guarantee the security of information that might compromise them and even endanger [their] personal safety."[50] We also are persuaded that a more detailed description of the types of intelligence methods involved could render these

release of the materials. *See* Affidavit of FBI Special Agent Martin Wood, at 2 (18 June 1979), *reprinted in* J.A. at 139, 140. Thus the affidavit of Special Agent Pramik is relied upon for the description of the type of harm that would result from disclosure of the FBI materials. *See* notes 44–47 *infra.*

44. *See* Affidavit of FBI Special Agent John J. Pramik, at 2–3 (29 Sept. 1978), *reprinted in* J.A. at 85, 86–87.

45. *See id.* at 3, 4–5, J.A. at 87, 88–89.

46. *See id.* at 3–4, J.A. at 87–88.

47. *Id.* at 4, J.A. at 88.

48. The district court conducted its review of the Government's classification decision under the criteria of Executive Order No. 11,652. *See Baez v. Department of Justice*, 647 F.2d 1328, 76–1922, Statement of Reasons (D.D.C. 5 July 1979). We carefully have examined the affidavits submitted and have determined that the FBI documents fall within the substantive crite-

ria of Executive Order No. 12,065. Apart from the seven categories of information enumerated in Executive Order No. 12,065, *see* note 34 *supra* and accompanying text, there is only one relevant, substantive difference between Executive Order No. 11,652 and Executive Order No. 12,065 and that difference is not substantial: to be classified as "Confidential" under the current Executive Order, disclosure of the materials must reasonably be expected to cause "identifiable" damage to the national security; whereas under Executive Order No. 11,-652 the modifier "identifiable" was not included.

49. Exec.Order No. 12,065, § 1–301(b), (c), (d), 3 C.F.R. 190, 193 (1979). *See* Affidavit of FBI Special Agent Martin Wood, at 2 (18 June 1979), *reprinted in* J.A. at 139, 140.

50. 444 U.S. 507, 512, 100 S.Ct. 763, 767, 62 L.Ed.2d 704 (1980).

methods ineffective for future intelligence operations. Finally, as we indicated in *Lesar v. United States Department of Justice*, a more precise indication of the type of intelligence cooperation between foreign governmental agencies and the FBI or a description of the information provided in confidence by these foreign agencies "would not only violate the agreement to maintain this information in confidence, and thus disclose the sensitive nature of the materials, but also reasonably could be expected to impair future intelligence exchanges as a result."[51]

In sum, we are convinced that the FBI has met its burden of showing that the materials logically fit within the claimed exemption. Appellant has provided absolutely no evidence to controvert the FBI's affidavits or to indicate bad faith on the part of the Bureau. We conclude that summary judgment for the Government on this issue was warranted without the need for an *in camera* inspection of the materials.

4.

■ With respect to the four Army documents, the Army submitted an affidavit that stated that two of the documents were classified to protect the source and technique involved in an "ongoing sensitive foreign intelligence program."[52] The official explained that disclosure of this information would compromise the operation in which the source and technique were being utilized and, as a result, would aid those who seek to penetrate or neutralize United States intelligence operations.[53] Classification was imposed on a third document be-

cause it contained a summary of the contents of the first two documents.[54] Finally, the official explained that a fourth document, described as an intelligence report of which appellant is not the subject, was classified because the information contained therein was provided by a confidential source. Disclosure of this document, the official averred, would discourage sources from providing future confidential information, impairing, as a result, the intelligence gathering capabilities of the Army.[55]

We also are persuaded that the Army has met its burden of showing a logical nexus between the documents in dispute and the claimed exemption. We are able to discern from the affidavit that the documents fit within the categories of "foreign government information" or "intelligence activities, sources or methods" set forth in Executive Order No. 12,065.[56] Also, the affidavit adequately demonstrates that disclosure of the materials reasonably could be expected to damage legitimate security needs. Because the description provided in the affidavit indicates that the materials logically fit within the claimed exemption and because no contrary evidence of record or evidence of agency bad faith was presented, we find that summary judgment for the Government was proper.

B. *Exemption 7(C)*

■ Exemption 7(C) of the FOIA protects against disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of per-

---

51. 636 F.2d 472 at 482 (D.C. Cir. 1980).

52. Affidavit of Thomas F. Conley, Chief of FOI/Privacy Office, United States Intelligence and Security Command, at 4 (30 Nov. 1978), *reprinted in* J.A. at 95, 98. Classifying Officer Conley conducted his review of the documents under Executive Order No. 11,652. The affidavit of Steve C. Vaughn, Assistant to the General Counsel of the Department of the Army, indicated that the Army on administrative appeal determined that the materials also necessitated classification under Executive Order No. 12,065. *See* Affidavit of Steve C. Vaughn, Assistant to the General Counsel of the Department of the Army (23 Jan. 1979) (incorporating Letter from Jill Wine–Volner, Army General

Counsel, to Ira M. Lowe, Attorney for Appellant (16 Jan. 1979)), *reprinted in* J.A. at 130.

53. *See* Affidavit of Thomas F. Conley, Chief of FOI/Privacy Office, United States Intelligence and Security Command, at 4–6 (30 Nov. 1978), *reprinted in* J.A. at 95, 98–100.

54. *See id.* at 6, J.A. at 100.

55. *See id.* at 12–14, J.A. at 106–08.

56. Exec.Order No. 12,065, § 1–301(b), (c), 3 C.F.R. 190, 193 (1979). *See* Letter from Jill Wine–Volner, Army General Counsel, to Ira M. Lowe, Attorney for Appellant (16 Jan. 1979), *reprinted in* J.A. at 132.

sonal privacy." [57] To ascertain whether this exemption is validly asserted, the district court must balance the privacy interest involved against the public interest in disclosure. [58]

At issue under this exemption are deletions both from the FBI files maintained on appellant (main files) and from the FBI files maintained on other individuals and organizations (see reference documents). [59] The excised materials consist of (1) the names and other identifying information of third parties in whom the FBI had an investigative interest, and (2) the names of middle and lower–level FBI personnel. [60] The latter category of information was excerpted only from the see reference files.

In "balancing the public interest in disclosure against the privacy interests of the individuals," the district court found that "the exemption was validly invoked." [61] Appellant disputes that determination, arguing that the FBI failed to establish a privacy interest in the materials at issue. We disagree.

### 1.

█ In his affidavit submitted to the court FBI Special Agent John C. Murphy succinctly explained the rationale for deleting information concerning third parties whom the FBI had investigated:

> To release the identities of these individuals and the information collected about

them where it does not pertain to [appellant] would announce to the world that these individuals were targets of an FBI investigation. There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation. [62]

Appellant claims that Exemption 7(C) improperly was invoked for these materials because the FBI made no showing that release of the information in fact would embarrass the individuals involved or damage their reputations. Instead, appellant suggests that those individuals who were investigated allegedly because of their political beliefs would be outraged rather than embarrassed and would not object to the disclosure of this information. [63]

We think that disclosure of these materials would constitute an unwarranted invasion of the privacy of the individuals involved. Although neither we nor the FBI can anticipate precisely what the reaction of each individual would be if it were revealed to the public that the individual had been the subject of an FBI investigation, we may surmise that many at least might either be embarrassed or experience some discomfort from the disclosure of this kind of personal information. [64] On the other side of the balance, we discern no identifia-

---

**57.** 5 U.S.C. § 552(b)(7)(C) (1976).

**58.** *See, e. g., Department of the Air Force v. Rose*, 425 U.S. 352, 370–73, 96 S.Ct. 1592, 1603–4, 48 L.Ed.2d 11 (1976).

**59.** The Army also invoked Exemption 7(C) to delete from certain of the Army documents identifying information concerning individuals who were the subject of an Army investigation. On this appeal appellant makes no claim that the Army improperly relied upon this exemption.

**60.** The identities of certain individuals who had appeared in public with appellant or who were, with appellant, co–subjects of an FBI investigation were released. In addition, the FBI released information concerning third parties in instances in which disclosure would not lead to the identification of a particular individual.

The FBI also asserted Exemption 7(C) to protect the identities of citizens who wrote or telephoned the FBI to complain about certain

of appellant's activities. Appellant does not contest the withholding of this information on this appeal.

**61.** *Baez v. Department of Justice*, 647 F.2d 1328, Statement of Reasons, at 2 (5 July 1979), *reprinted in* J.A. at 173, 174.

**62.** Affidavit of FBI Special Agent John C. Murphy, at 8 (3 Oct. 1977), *reprinted in* J.A. at 37, 44.

**63.** *E. g.*, Brief for Appellant at 44.

**64.** *See Librach v. FBI*, 587 F.2d 372, 373 (8th Cir. 1978) (Exemption 7(C) sustained for names of persons investigated by FBI for suspected criminal activity), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979). *See also Irons v. Bell*, 596 F.2d 468, 474 (1st Cir. 1979); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977).

ble public interest in these materials. We hold therefore that the district court properly sustained the claimed exemption.

### 2.

■ With respect to the names of lower and middle–level FBI personnel deleted from certain of the see reference documents released to appellant, appellant claims that the FBI agents, as public officials, have no privacy interest in their names. We rejected precisely this contention in *Lesar v. United States Department of Justice.*[65] In that case we held that government officials have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.[66]

In this instance, Special Agent John C. Murphy explained the reason for the deletion as follows:

> Agents of the FBI conduct official inquiries into violations of various criminal statutes and in national security cases. Furthermore, Agents of the FBI come into contact with individuals from all strata of society. They conduct arrests and searches, both of which constitute reasonable but nonetheless serious intrusions into the lives of people. Many of these people carry grudges which last for years and seek any excuse to harass the responsible Agent. The publicity associated with release of an Agent's name in connection with a particular investigation could rekindle an animosity toward the Agent.[67]

On the basis of this affidavit, the district court properly could find that disclosure of the names of the individual agents could subject these agents to personal harassment or discomfort.

■ Again, we caution as we did in *Lesar,* however, that we do not mean to imply a blanket exemption for the names of all FBI agents in all documents.[68] Certainly Congress did not intend this result; rather the clear import of the statute is that a balancing of the interest in privacy against the public interest in disclosure must take place. We think that the public interest might be served by the release of the names of particular agents in instances, for example, in which the agent is called upon to testify concerning his activities, or in which the performance of a particular agent otherwise is called into question. As the Government indicates in its brief, there is a strong public interest in monitoring the conduct and actual performance of public officials.[69] Release of the contested information in this case, however, would not substantially assist this effort. We therefore affirm the district court's ruling on this issue.

### C. *Exemption 7(D)*

■ Exemption 7(D) protects from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . disclose the identity of a confidential source, and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source."[70] The Government invoked this exemption to withhold the identities of state, local, and foreign agencies that have provided information in confidence to the FBI. Appellant contends that the term "source" in Exemption 7(D) is intended to apply only to private and not governmental sources.

Appellant's argument runs directly contrary to our decision in *Lesar v. United*

---

**65.**   636 F.2d 472 (D.C. Cir. 1980).

**66.**   *See id.* at 487–488.   *Accord, Nix v. United States,* 572 F.2d 998, 1005–06 (4th Cir. 1978); *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977); *Pacheco v. FBI,* 470 F.Supp. 1091, 1098–99 (D.P.R.1979); *Malloy v. United States Dep't of Justice,* 457 F.Supp. 543, 546 (D.D.C.1978); *Ferguson v. Kelley,* 455 F.Supp. 324, 327 (N.D.Ill.1978).

**67.**   Second Affidavit of FBI Special Agent John C. Murphy, at 3 (12 Sept. 1978), *reprinted in* J.A. at 79, 81.

**68.**   *See* 636 F.2d 472 at 487.

**69.**   *See* Brief for Appellees at 38.

**70.**   5 U.S.C. § 552(b)(7)(D) (1976).

*States Department of Justice.*[71] In that case we stated that, as a matter of common usage, the word "source" properly is understood to refer simply to the originator of information.[72] After examining the legislative history of the exemption we were convinced that Congress intended no distinction between the types of sources protected; rather we found that the legislative history evidenced a clear congressional intent to extend protection generally to whatever source of information the criminal law enforcement authority might employ during the course of an investigation.[73] We thus sustained the plain meaning of the statutory exemption and held that the word "source" includes nonfederal entities such as state, local, and foreign law enforcement agencies as well as individuals such as private citizens and paid informants.[74]

██ In this instance the Government relied upon Exemption 7(D) to delete the identities of state, local, and foreign entities that have provided confidential information to the FBI. Exemption 7(D) protects not only information furnished by a confidential source but the identity of a confidential source as well. After having examined the affidavits submitted in this case, we conclude that the Government invoked the exemption in good faith. We therefore find that summary judgment was appropriate.

D. *Adequacy of the District Court's Opinion*

██ Finally, appellant contends that the district court did not provide an adequate indication of its reasons for sustaining the claimed exemptions. Although the district court gave little indication of the rationale

underlying its holding in the initial ruling rendered from the bench,[75] the court subsequently issued a written statement in response to appellant's Motion for Clarification and A More Definite Statement of Reasons.[76] Appellant maintains that this statement was insufficient. We disagree.

██ The district court must provide an adequate basis for its decision so that neither the parties nor the reviewing court is left to speculate how the district court reached its final determination.[77] In this instance the district court considered the arguments raised by appellant and gave its reasons for rejecting those contentions. Although the statement was undeniably brief, it pinpointed the factual and legal issues involved in this case. We think therefore that the statement was adequate for purposes of this appeal.[78] Moreover, after carefully examining the record, as we indicated above, we find that it amply supports the district court's conclusions.

### III. CONCLUSION

The judgment of the district court is *Affirmed.*

BAZELON, Senior Circuit Judge, with whom EDWARDS, Circuit Judge, joins, concurring:

Though I concur in the opinion of the court, I write separately to highlight three troubling issues not decided by today's opinion.

The FBI invoked Exemption 1 to justify nondisclosure of documents on the grounds that the documents contained references to foreign intelligence sources.[1] I do not read

---

**71.** 636 F.2d 472 (D.C. Cir. 1980).

**72.** *Id.,* slip op. at 33.

**73.** *Id.* at 33–37.

**74.** *Id.* at 37.

**75.** *See Baez v. Department of Justice,* 647 F.2d 1328, Transcript, *reprinted in* J.A. at 170, 170–71.

**76.** *See id.,* Statement of Reasons (D.D.C. 5 July 1979), *reprinted in* J.A. at 173.

**77.** *E. g., Schwartz v. IRS,* 511 F.2d 1303, 1307 (D.C.Cir.1975).

**78.** We also find no merit to appellant's argument that because she has raised several novel and difficult issues of law she has "substantially prevailed" within the meaning of the attorney's fees and cost provision, 5 U.S.C. § 552(a)(4)(E) (1976). The Government had a reasonable basis in law for withholding the documents involved in this appeal. *See Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir. 1977).

**1.** 5 U.S.C. § 552(b)(1).

the court's opinion as holding that the exemption applies whenever foreign governments have been implicated in domestic political surveillance. Instead, the court in this case found a logical nexus between Exemption 1 and specific foreign policy concerns. The FBI claimed that disclosure here would harm its future relationship with a foreign diplomatic establishment and could lead to disruption of foreign relations. *See* Joint Appendix at 88. Whether a broader exclusion would be consistent with Executive Order No. 12,065 and with Exemption 1 of the FOIA is an issue not decided here.

The FBI also relied on Exemption 7(C) to justify deletion of the names of individual FBI agents.[2] The court's analysis of this claim bears repeating: Exemption 7(C) does not create a blanket rule of nondisclosure for the names of FBI agents.[3] The competing interests in privacy and disclosure must be balanced on a case–by–case basis. *See* Maj. Op. at 1339. Resolution of these competing interests is facilitated by affidavits which specify why the privacy interest for any agent outweighs the disclosure interest implicated by a specific request. A difficult conflict between these interests might arise where the record supports a claim of wrongdoing by unnamed agents. The facts here do not give rise to these conflicting interests.

Finally, the FBI relied on Exemption 7(D) to justify nondisclosure of documents that would reveal a confidential source.[4] The opinion for the court rejects the plaintiff's contention that confidential sources include only individuals. *See* Maj. Op. at 1340. The court's opinion does not, however, address whether a confidentiality agreement alone supports summary judgment in all circumstances. In this case, there was no claim of agency bad faith or improper transmission of information between entities.

**2.** 5 U.S.C. § 552(b)(1)(7)(C).

**3.** *See Lesar v. Department of Justice,* 636 F.2d 472 at 487 (D.C.Cir.1980).