**Don EDWARDS, Plaintiff,**

v.

**CENTRAL INTELLIGENCE
AGENCY, Defendant.**

**No. 77–2065.**

United States District Court,
District of Columbia.

March 27, 1981.

Richard Schmidt, Jr., Howard M. Liberman, Washington, D. C., for plaintiff.

Mark F. Evens, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

JOHN GARRETT PENN, District Judge.

This is an action filed pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, in which the plaintiff, a member of the United States House of Representatives, seeks to gain access to "all records which relate in any way to the publication of a book, '*Chile's Marxist Experiment*' authored by Robert Moss, and published in Britain in 1973 by David & Charles, and by Halsted Press and John Wiley & Sons, Inc. in the United States in 1974." [1] The defendant denied the request, relying upon Executive Order 11652, subsection 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403(d)(3), as implemented by Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. §§ 403a–403j, and the FOIA, 5 U.S.C. § 552(b)(3).[2] Plaintiff filed an internal appeal which was denied. Plaintiff thereafter filed this action, having exhausted his administrative remedies.

The case is now before the Court on cross motions for summary judgment.

## I

The defendant asserts that the information is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1) and (b)(3). Defendant also asserts that, not only is it not required to disclose the requested information, it is not even required to admit or deny that the information exists. In short, the Central Intelligence Agency (CIA) argues that it can neither confirm nor deny any CIA involvement with the book, *Chile's Marxist Experiment.* It contends that an admission or denial of involvement with the book would itself be a disclosure of classified information.

Plaintiff disputes the agency's argument and contends that the book, if there was an involvement by the CIA, was used for propaganda or other purposes, rather than as an intelligence source or method and that such involvement was therefore not for a purpose authorized by either the National Security Act or the Central Intelligence Act. Based upon this assertion, plaintiff argues that the CIA cannot properly assert either exemption.

This Court has given careful consideration to the arguments of the parties and concludes that plaintiff's argument must fail and that the CIA is entitled to summary judgment.

## II

The agency's first contention is that the information is exempt pursuant to Section 552(b)(1). That section provides that information which is

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (b) [is] in fact properly classified pursuant to such Executive order

is exempt from disclosure.

■ Defendant contends that the information is exempt under the criteria established by Executive Order 12065, 3 CFR 190 (1978 Compilation) (1979). The information

---

1. Compl., ¶ 4, and Ex. A.

2. Compl., ¶ 5, and Ex. B.

was originally classified under Executive Order 11652, 3 CFR 378 (1971–175 Compilation) (1976), however that Executive Order was superseded by Executive Order 12065 which became effective on December 1, 1978. Since Executive Order 11652 was superseded while this case was pending before the court, the relevant Executive Order for assessing the agency's classification decision is the one currently in force; Executive Order 12065. *Baez v. U.S. Dept. Justice,* 647 F.2d 1328 at 1334 (D.C.Cir. 1980)

> The standard that [the] court must follow in reviewing the agency's classification decision under Executive Order 12065 . . . is whether the information fits within one of the seven enumerated categories and whether unauthorized disclosure of the material reasonably could be expected to cause the requisite potential harm.

*Id.* at 1334. *See also Lesar v. U.S. Dept. of Justice,* 636 F.2d 472, 481, (D.C.Cir.1980).

■ The CIA has the burden of demonstrating the proper classification. *Lesar v. U.S. Dept. of Justice, supra,* at 481; *Hayden v. National Security Agency—Central Security Services,* 197 U.S.App.D.C. 224, 608 F.2d 1318 (1979), *cert. denied* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). The agency may satisfy the burden by filing affidavits that set forth in detail the description of the information and documents, without of course revealing the information sought to be exempted from disclosure, and that give ample justification in support of the claim that the information is exempt from disclosure. "The court must accord *'substantial weight'* to these affidavits" if the agency files a motion for summary

judgment and supports it with affidavits that demonstrate "that the information logically falls within the claimed exemption" (footnote omitted). *Baez v. U.S. Dept. of Justice, supra,* at 1335. If that information "is neither controverted by contradictory evidence in the record nor by evidence of agency bad faith, then summary judgment for the government is warranted" (footnote omitted). *Id.,* at 1335.

■ Here the CIA has filed two affidavits by Robert Owen, the Information Review Officer for the Directorate of Operations of the CIA. The first was filed on November 28, 1978 (First Owen Affidavit), and the second was filed on August 9, 1979 (Second Owen Affidavit). In addition, on July 21, 1978, Mr. Owen, on behalf of the agency, answered interrogatories propounded by the plaintiff. This Court has carefully reviewed the affidavits, the answer to interrogatories, the pleadings and the memoranda of law filed on behalf of the CIA, and has not detected any evidence of agency bad faith. The affidavits comport with the standards set forth in *Allen v. CIA,* 636 F.2d 1287 (D.C.Cir.1980), *Baez v. U.S. Dept. of Justice, supra,* and therefore are entitled to "substantial weight".[3]

Assuming the existence of the requested documents,[4] the Court concludes that they are exempt from disclosure pursuant to Section 552(b)(1). Release of the information may serve to identify intelligence activities, sources or methods or affect the foreign relations or foreign activities of the United States. *See* Executive Order 12065, Section 1–301(c) and (d). The information, if released, may reveal the agency's sponsorship of a foreign information dissemina-

---

**3.** It is true that the affidavits do not set forth all of the information normally required under the holding in *Allen v. CIA,* 636 F.2d 1287, (D.C.Cir.1980). The information not furnished was deleted consistent with the agency's argument that it can neither admit nor deny the existence of the information without disclosing classified material. Thus, the affidavits do not set forth the specific information usually required by *Allen.* The affidavits are in sufficient detail to enable the Court, under the narrow facts of this case, to make a determination that,

if indeed the information does exist, it is properly classifiable under Executive Order 12065.

**4.** The Court did not require an *in camera* submission by the CIA, although it might otherwise have proved helpful in making the necessary determination respecting the exemptions asserted pursuant to 5 U.S.C. § 552(b)(1) and (b)(3), since such a submission would necessarily run afoul of the agency's argument that it is required neither to admit nor deny the existence of the documents or information.

tion operation, arrangements made with publishers or writers, and cause considerable damage to the reputations of persons or associations involved in the project.[5] As a result, future cooperation of such persons or organizations or like groups, may be adversely affected. *See Halperin v. CIA,* 629 F.2d 144 (D.C.Cir.1980). The cooperation of such persons takes place under a "pledge of extreme confidentiality" [6] and unless the participation of those persons is protected, their effectiveness and the effectiveness of such programs would be diminished.[7]

Last, respecting the claim for exemption under Section 552(b)(1), is that the disclosure would effect the foreign relations or foreign activities of the United States. Assuming, as the Court has, that the information exists, it seems quite clear that such information may very well have serious repercussions on the United States' relationship with Chile, and indeed other nations in that area of the world.

This Court is satisfied that the information is properly classifiable under Executive Order 12065 and is therefore exempt under Section 552(b)(1).

### III

■ The agency also claims an exemption under Section 552(b)(3). That section serves to exempt information from disclosure under the FOIA where it is:

> [S]pecifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

The statute that purportedly renders the information exempt is 50 U.S.C. § 403(d)(3) which makes the director of the CIA responsible for "protecting intelligence sources and methods from unauthorized disclosure". Under 50 U.S.C. § 403g, such information is exempt from disclosure.

These statutory provisions are exempting statutes for the purposes of Section 552(b)(3). *Allen v. CIA, supra; Sims v. CIA,* 642 F.2d 562 (D.C.Cir.1980); *Goland v. CIA,* 197 U.S.App.D.C. 25, 607 F.2d 339 (1978), *cert. denied* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Baker v. CIA,* 188 U.S.App.D.C. 401, 580 F.2d 664 (1978); *Weissman v. CIA,* 184 U.S.App.D.C. 117, 565 F.2d 692 (1977).

■ Again, in order to discuss the exemption, it is necessary to assume that the information exists. *See* Part II, *supra.* Since Section 403(d)(3) and 403g are exempting statutes, the only issue is whether the information and documents are such as would fall within the protection of those provisions. More specifically, the question is whether the information relates to an intelligence source or method as provided for in Section 403(d)(3).

Recently a court noted that the phrase "intelligence sources and methods" is ambiguous, *Sims v. CIA, supra,* at 570, but that one can reach a proper interpretation by construing that section together with Section 403g. Section 403g refers to an exemption which provides for the exemption of material "which requires the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the agency". In the view of the Court, the language of Sections 403(d)(3) and 403g would encompass the type of information sought in this case; the names of writers or publishers employed by the CIA, the costs or the expenses or salaries paid by the CIA to those persons or groups, and the involvement of the CIA with the publication of the book. The information if furnished to the plaintiff, would directly disclose a covert program operated by the agency, and those involved in its operation. There is ample support for the exemption in the affidavit filed by Mr. Owens. Accordingly, the Court concludes that the information is exempt under Section 552(b)(3).

---

5. First Owen Affidavit, ¶ 8.

6. First Owen Affidavit, ¶ 8.

7. First Owen Affidavit, ¶ 9.

## IV

■ The plaintiff argues that the CIA cannot assert the exemptions because the operations conducted here, assuming that there was CIA involvement, were not authorized under the charter of the agency. Plaintiff bottoms his argument on *Weissman v. CIA, supra.* In *Weissman,* the agency claimed that the requested material was exempt under Sections 552(b)(1) and (b)(3), and *(b)(7).* The court rejected the claim for exemption under Section 552(b)(7) because the agency had conducted an extensive investigation of an American citizen living at home in the United States. It is provided in 50 U.S.C. 403(d)(3) that "the agency shall have no police, subpena, *law enforcement powers,* or internal security functions" (emphasis supplied). An exemption asserted under Section 552(b)(7) must be based upon "records compiled for law enforcement purposes". The decision as to whether information is exempt under Section 552(b)(7) and its subsections, must be made by first determining whether the agency has satisfied the first prong of the test, i. e., is the record compiled for law enforcement purposes, before considering the several second prongs discussed in subsections (A), (B), (C), (D), (E), or (F). Since the statute specifically states that the agency does not have law enforcement powers, the agency was unable to satisfy the first prong in *Weissman* and its request for exemption under Section 552(b)(7) necessarily failed.

The agency makes no such argument here; it only relies upon Section 552(b)(1) and (b)(3). This is not a case where the agency seeks to act in an area specifically prohibited by statute as was the case in *Weissman.* It is noted also that the court in *Weissman* found that the exemptions claimed under Section 552(b)(1) and (b)(3) were properly sustained.

This Court is satisfied that the agency was acting within its statutory powers, but even assuming that this was not the case, the information would still be exempt. The fact that the agency may have strayed from its statutory path does not mean that a decision to release the information would have less of an impact on or would cause less harm to our foreign relations and foreign activities; indeed, it is more likely that the converse is true. This is not to say that in every case where an agency wanders from its path the information is automatically exempt; rather, the assertion of the exemption is not foreclosed where an issue of national security is involved. The fact that the agency was wrong does not mean that the identity, sources and methods of those involved in the errant activity should be open to public scrutiny with all of the attendant risks. Such matters involving intelligence cooperation must necessarily be left to the scrutiny and to the review of those charged with that statutory responsibility, and often cannot be opened to the general public.

The Court concludes that the CIA acted within its powers, but assuming that conclusion is incorrect, the information is still exempt from disclosure.

## V

■ The final issue is whether the agency can refuse to state whether the information even exists. Plaintiff argues that it cannot but this Court disagrees. Executive Order 12065 specifically provides at Section 3–505:

> No agency in possession of a classified document may, in response to a request for the document made under the Freedom of Information Act or this Order's Mandatory Review provision, refuse to confirm the existence or non-existence of the document, unless the fact of its existence or non-existence would itself be classifiable under this Order.

Based upon the affidavits filed in this case, no evidence of bad faith having been found, the Court concludes that the agency has properly asserted Section 3–505 of the Executive Order and that accordingly, the agency is not required to confirm or deny the existence of the information or documents.

Taking all of the above matters into consideration, the Court concludes that the agency has properly asserted the exemp-

tions under Section 552(b)(1) and (b)(3), and that accordingly, the agency is entitled to summary judgment as a matter of law. The Court will enter an appropriate order denying the plaintiff's motion for summary judgment, granting the defendant's motion for summary judgment, and dismissing this case with prejudice.