**G. Robert BLAKEY, Plaintiff,**

v.

**DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 81–2174.**

United States District Court,
District of Columbia.

Oct. 18, 1982.

James H. Lesar, Fensterwald & Associates, Arlington, Va., for plaintiff.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This case, which commenced as an FOIA action to obtain vast quantities of FBI documents related to the assassination of President Kennedy and has provoked considerable acrimony during its course to date, had been distilled prior to hearing into a dispute over a single issue, viz., plaintiff's right to a waiver of defendant's customary charges for copying the remaining materials to which all agree he is entitled. At oral argument, however, controversy revived over two additional issues: the FBI's invocation of Exemption 7(C) to refuse to confirm or deny the existence of additional records concerning one Rogelio Cisneros, and the adequacy of its search for records relating to acoustical analyses conducted in the assassination investigation. These three issues are now before the Court on cross-motions for summary judgment supported by appropriate affidavits on both sides.

### I. Fee Waiver

Plaintiff Blakey is currently a professor at the University of Notre Dame Law School, and a former Chief Counsel and Staff Director of the House Select Committee on Assassinations which investigated, *inter alia,* the assassination of President John F. Kennedy. In June of 1979 Blakey made a formal FOIA request of the Federal Bureau of Investigation for records relating to Lee Harvey Oswald and Jack Ruby, some 50,000 pages of documents in all, and asked for a waiver of all fees imposed for copying them which would otherwise total $5,196.70.[1] The FBI denied Blakey's fee

---

1. $1,584.50 for 15,845 pages of Ruby documents and $3,612.20 for 36,122 pages of Os- wald documents at 10 cents per page.

waiver request initially in September, 1979, and the decision was ultimately affirmed by the Office of Privacy and Information Appeals in October, 1981, on Blakey's appeal.

The applicable provision of FOIA, 5 U.S.C., § 552(a)(4)(A), authorizes agencies to impose reasonable and uniform standard charges for document search and duplication, fixed to recover only the direct costs thereof, and continues to state:

> Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public.

The implementing Department of Justice regulation, 20 C.F.R., § 16.9(a) (1981), provides that a determination that a fee waiver is in the public interest "shall ordinarily not be made unless the service to be performed will be of benefit primarily to the public as opposed to the requester, or unless the requester is an indigent individual." Blakey disclaims indigency.

In its original denial of Blakey's fee waiver request, the FBI determined that "interests of the general public appear more likely to be served by the preservation of public funds." The Office of Privacy and Information Appeals reached the same conclusion, observing that the Kennedy assassination file had been made available to the public in the FBI reading room in Washington. (Although Blakey travels to Washington frequently, he resides in Indiana). Copies of the file have been requested and paid for in full by four news organizations, one university, and a microfilming firm (which Blakey says he cannot locate). The Department of Justice has consistently denied fee waivers for the Kennedy materials since the records were initially processed

for release under FOIA, and they have been furnished without charge on only one occasion and that pursuant to court order.

Plaintiff contends he is uniquely situated to benefit the public in the uses he intends to make of these documents. He states that he expects to make recommendations to the FBI and Department of Justice for further investigation of Kennedy's death, to teach a course at his law school on the subject, and to write "one or more publications." When his review is complete he anticipates donating the materials to Notre Dame's library.

As a general rule an agency has broad discretion concerning fee waivers, and its decision should not be overturned unless it is arbitrary, capricious or not otherwise in accordance with law. *Eudey v. CIA,* 478 F.Supp. 1175 (D.D.C.1979); *Lybarger v. Cardwell,* 577 F.2d 764, 766 (1st Cir. 1978); *Burke v. U.S. Department of Justice,* 559 F.2d 1182 (10th Cir. 1977). Relying on *Fitzgibbon v. CIA,* No. 76–700 (D.D.C. January 10, 1977), however, plaintiff contends that the FBI must ignore the substantial cost incurred in providing him with a copy of the Kennedy materials in light of the public's inordinate and continuing interest in the assassination. But *Fitzgibbon* involved a request for a waiver of *search* fees in advance, and in a relatively modest amount, for information not yet in the public domain, not the considerably greater reproduction cost for the single copy of documents already located, assembled, and published which is involved here.[2]

The Court finds that the FBI could (and did) rationally decide that the conservation of public funds better served the public interests than providing Blakey with his own personal copy of the Kennedy material. Granting his fee waiver would result in unequal treatment of requests for

---

**2.** *Fitzgibbon* held that the agency's "perceived obligation" to collect fees for processing requests was irrelevant. In the instant case, the record indicates the agency's decision was not the result of a self-perceived duty but of balancing the relevant public interests. *Plaintiff* also relies on *Allen v. FBI,* 551 F.Supp. 694

(D.D.C. 1982) and *Weisberg v. Bell,* No. 77–2155 (D.D.C. Jan. 16, 1978). Neither case is applicable here. The former involved records not available to the general public anywhere and the latter was expressly limited by the judge who ordered document production to the specific facts of that case.

the same material from requesters at least as likely to benefit the public as Blakey, for several national news organizations, whose primary business it is to disseminate information (and who are, thus, more likely to reach the public with it than plaintiff), and another educational institution have already paid the full charge for it apparently without objection. While plaintiff's credentials are impressive, there are undoubtedly many other potential document seekers throughout the country whose special abilities might provide unique illumination of any of the myriad subjects on which government agencies keep records. To hold that such abilities and worthy intentions alone require agencies to reproduce any and all records for free upon request would result in a precedent likely to result in a drain upon agency appropriations that Congress never intended or the taxpayers expected to underwrite.

## II. Cisneros Records

In April, 1980, plaintiff requested all agency records concerning one Rogelio Cisneros.[3] The FBI initially spurned the request altogether because plaintiff had not obtained Cisneros' written authorization, but several months later the request was processed and Blakey ultimately received all documents concerning Cisneros contained in files having to do with the Kennedy assassination. The FBI refuses to confirm or deny its possession of any other records relating to Cisneros which might be found elsewhere, i.e., indexed under topics other than the Kennedy assassination, claiming it has balanced the public's right to know against Cisneros' right to privacy and has determined the documents, if they exist, are exempt under 5 U.S.C.,

§ 552(b)(7)(C), which permits the withholding of "investigatory records compiled for law enforcement purposes...to the extent that the production of such records would...constitute an unwarranted invasion of personal privacy."[4]

To determine the applicability of Exemption 7(C) the Court must conduct the customary *de novo* review by striking its own balance between the privacy interest at stake and the public interest in disclosure. *Baez v. United States Department of Justice,* 647 F.2d 1328, 1338 (D.C.Cir.1980); *Lesar v. United States Dept. of Justice,* 636 F.2d 472, 486 (D.C.Cir.1980). Blakey claims that Cisneros is a public figure and that the persistence of the public's interest in the Kennedy assassination outweighs Cisneros' interest in what remains of his privacy. But if Cisneros is a public figure in a context other than the Kennedy assassination investigation, it does not appear from the record before the Court.[5] The FBI says that it has provided all records having to do with Cisneros in the Kennedy assassination file and is willing to provide anything else it may have about him upon receipt of written authorization from Cisneros himself. Plaintiff acknowledges that he has not attempted to obtain such authorization because he doesn't know where to locate him. The FBI says, correctly, that the FOIA does not impose a burden on it to track down an individual about whom another has requested information merely to obtain the former's permission to comply with the request. In the circumstance of the parties' stalemate over authorization, the Court presumes that Cisneros might at least be embarrassed or "experience some discomfort" from a disclosure of the existence of information about him in an FBI

3. Plaintiff asserts that Cisneros was a member of JURE, an anti-Castro Cuban group and a participant in the "Odio incident," i.e., a visit to one Sylvia Odio, a Cuban *emigree,* with Lee Oswald and another man shortly before the assassination. Some Kennedy investigators speculate that those three people conspired for Kennedy's death in retaliation for the Bay of Pigs invasion.

4. Plaintiff has not sought a *Vaughn* index for such documents nor does he contend that records may exist which were not compiled for law enforcement purposes.

5. At oral argument plaintiff's counsel suggested Cisneros may have some unspecified connection with "organized crime" but conceded that such notoriety as he may have derives from his mention in connection with the Kennedy assassination.

file unrelated to the Kennedy assassination, and it can discern no identifiable public interest in him otherwise. *Baez v. United States Department of Justice,* 647 F.2d 1328, 1338–39 (D.C.Cir.1980); *see also Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 863 (D.C.Cir.1981). Indulging that presumption, the Court finds the FBI to have carried its burden with respect to the Exemption 7(C) claim for other Cisneros records.

### III. Adequacy of Search for Acoustical Records

In October, 1980, plaintiff requested copies of various documents having to do with an acoustical analysis of a sound recording of events contemporaneous with the Kennedy assassination conducted for the House Select Committee on Assassinations. He was provided with a copy of the FBI's own report on the subject in December, 1980.[6] Plaintiff then requested all documents prepared in connection with a January 31, 1981, meeting between representatives of the FBI and the National Academy of Sciences Committee on Acoustics ("NASCA"). On May 21, 1981, the FBI informed Blakey it had no such material.

The FBI's affidavits explain that, when responding to a FOIA request, the FBI searches for responsive documents in its general indices which it alphabetizes by subject matter and individual. Those indices contain entries identifying "main files" carrying the name of the subject of the request and "see references" which cross-refer to other files in which the subject is mentioned.[7] According to its affidavits the FBI could not make an indices search for the acoustical material due to the absence of identifying data. A verbal inquiry of the National Academy of Sciences liaison in the Technical Services Division did not disclose the existence of any documents in addition to the one already furnished to plaintiff, but a memorandum concerning the NASCA meeting in early 1981 enabled two other documents to be located and released to plaintiff in February, 1982. The FBI conducted yet another search after plaintiff filed his opposition to defendants' motion for summary judgment in April, 1982. No additional records were retrieved, and the FBI says, simply, that it has nothing else on the subject, exempt or not, which it is able to find.

■■ To prevail on an FOIA motion for summary judgment on the ground that all extant information has been accounted for, the agency must show that each document has been produced, is unidentifiable or is exempt from FOIA's disclosure requirements. The agency's affidavits, which should be relatively detailed and non-conclusory, are to be accorded substantial weight if submitted in good faith. *Goland v. CIA,* 607 F.2d 339 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).[8]

■■ Plaintiff argues that an agency should not be permitted to frustrate the FOIA by hiding behind the limitations of its own filing system and that, at the least, defendant should have to inquire for documents at each of its division offices or wherever else common sense suggests they might be found. The issue, however, is not whether any further documents might conceivably exist, but, rather, whether the FBI's search for responsive documents was adequate. *Id.,* 607 F.2d at 369. The FOIA was not intended to compel agencies to become *ad hoc* investigators for requesters whose requests are not compatible with

---

**6.** The FBI analyzed a tape recording made at the time of the assassination by the Dallas Police Department.

**7.** The names of the subject, suspect or victim in the case caption are automatically indexed. All other indexing decisions are made by the investigating and supervising agents. Only names and information considered pertinent and necessary for future retrieval are indexed.

**8.** Plaintiff has alleged the FBI's search was in bad faith because it initially denied controlling any documents responsive to his request and later released two documents. Any such inference, however, is expressly prohibited by *Ground Saucer Watch, Inc. v. CIA,* 665 F.2d 394 (D.C.Cir.1981).

their own information retrieval systems. A requester "must take the agency records as he finds them." *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, at 323 (D.C.Cir.1982); *Goland, supra,* 607 F.2d at 353; *Marks v. United States Department of Justice,* 578 F.2d 261, 263 (9th Cir. 1978). The FBI has conducted not one, but two, searches to comply with plaintiff's request. It has released those documents responsive to the request which its index search discovered and otherwise came to its attention. And it has offered to pursue any *specific* lead plaintiff can furnish to the whereabouts of any other documents. The Court finds this level of agency effort sufficient to constitute an adequate search in response to plaintiff's request.

For the foregoing reasons, it is, this 14th day of October, 1982,

ORDERED, that defendant's motion for summary judgment is granted; and it is

FURTHER ORDERED, that plaintiff's cross-motion for summary judgment is denied.