Gary SHAW, Plaintiff,

v.

U.S. DEPARTMENT OF STATE, et al., Defendants.

Bernard FENSTERWALD, Jr., Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, Defendant.

Civ. A. Nos. 80–1056, 81–0942.

United States District Court, District of Columbia.

Feb. 28, 1983.

Bernard Fensterwald, Jr., Fensterwald & Associates, Arlington, Va., for plaintiffs.

Nathan Dodell, Asst. U.S. Atty., Miriam M. Nisbet, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiffs in these consolidated cases have long been investigating the mysterious circumstances surrounding the assassination of President John F. Kennedy. To further

their search, and pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or "Act"), plaintiffs requested access to records in the possession of defendants pertaining to several individuals allegedly part of a plot by exiled French Secret Army terrorists to murder the American President.[1] Now before the Court are defendants' motions for summary judgment and plaintiffs' oppositions thereto.

■ In any FOIA case, the Court is to "determine the matter de novo, and ... the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B) (1976). Summary judgment may be granted if the moving party proves that no substantial and material facts are in dispute and that he is entitled to judgment as a matter of law. *McGehee v. Central Intelligence Agency,* 697 F.2d 1095 at 1100 (D.C.Cir.1983); *Weisberg v. United States Dep't of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980); *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir.1979). To prevail in a FOIA suit, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Id.,* quoting *National Cable Television Ass'n v. FCC,* 479 F.2d 183, 186 (D.C. Cir.1973) (footnote omitted).

Defendants Department of State (State), the Immigration and Naturalization Service of the Department of Justice (INS) and the Drug Enforcement Agency of the Department of Justice (DEA)[2] maintain that they were unable to locate any records with the identifying information provided by plaintiffs. Plaintiffs' claims against those agencies concern the adequacy of the search performed.

■ Defendants the Federal Bureau of Investigation (FBI) and the Central Intelligence Agency (CIA), however, have withheld some documents in their entirety and some portions of documents, relying on particular exemptions to the Act. Affidavits have been submitted demonstrating the applicability of the exemptions invoked and have been given the requisite "substantial weight" in the reviewing process. *See, e.g., Hayden v. National Security Agency,* 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). If the affidavits

> describe the documents and justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith ...

then summary judgment is appropriate. *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). Although it was not obligatory, in this case to expedite resolution of these matters, the Court inspected a sample of the CIA documents as designated by counsel and all of the FBI documents to determine whether denial of access was indeed justified under the Act.

I. Department of State

Civil Action No. 80–1056

■ On April 20, 1979 plaintiff Shaw requested access to records of any kind relating to Michael Victor Mertz, Christian David and Thomas Eli Davis, III.[3] By letters dated July 10, 1979, August 21, 1979 and August 28, 1979, defendant released 45 documents in full and 19 in part, pertaining to Christian David. Defendant also informed plaintiff, by letter dated September 5, 1979, that with reference to Thomas Eli Davis, III, partial release would be made from documents referred to the State Department by the FBI.[4] Approximately 8 months later, on March 19, 1980, plaintiff's

---

1. Plaintiffs have elaborated their theory for the Court in an interesting and provocative memorandum dated August 27, 1982, entitled "A Possible French Connection".

2. DEA is a defendant in Civil Action No. 81–0942 only.

3. Complaint, *Shaw v. Department of State,* Exh. A.

4. Answer, *Shaw v. Department of State,* ¶ 11.

counsel wrote to State's FOIA Appeal Board formally appealing State's ostensible denial of access to records pertaining to Davis since plaintiff had received none to date.[5]

Defendant's motion for summary judgment is supported by the affidavits of Thomas W. Ainsworth, Acting Deputy Assistant Secretary for the Classification/Declassification Center of the Department of State and Frank M. Machak, Chief of the Information Access and Services Division of the Department of State's Foreign Affairs Information Management Center. The Ainsworth affidavit includes a *Vaughn* index [6] justifying the withholding of all or part of 34 documents pertinent to plaintiff's requests.

But the legal sufficiency of that index is not in issue: "In opposing the motion of the State Department for summary judgment, plaintiff limits himself to contesting the adequacy of the search." [7] Plaintiff contends that State should have more than one document on Jean Rene Souetre. Yet, as the Machak affidavit points out, plaintiff never requested information regarding this individual from this defendant.[8] The one document which was released to plaintiff about Souetre had been referred to the Department of State by the CIA.

Plaintiff also questions State's response that it located no documents relating to Michael Victor Mertz. Machak's affidavit explains the coordinated search process undertaken for any material on Mertz. Seven record systems were thoroughly reviewed but nothing pertaining to Mertz was discovered. In addition, each of the 34 documents listed in the Ainsworth affidavit as having been released to plaintiff with portions deleted or as having been withheld in their entirety, was reviewed for references to Mertz. Mertz was not mentioned in the deleted portions of the 19 documents released in part, nor in any of the 15 documents withheld altogether. Particularly, since plaintiff's letter of appeal concerned Davis only, it is determined that State's search with reference to Mertz was more than sufficient. *See, e.g., Goland v. Central Intelligence Agency,* 607 F.2d 339, 352–53, 369–70 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

Finally, plaintiff challenges the adequacy of defendant's search for information pertaining to Thomas Eli Davis, III. According to the Machak affidavit the four record systems searched did not turn up any additional documents pertaining to Davis. However, duplicates of six documents which had been referred to State by the FBI were located in the Security Records. Plaintiff was notified of these items and the applicable exemptions supporting non-disclosure of some parts of them on September 5, 1979. But plaintiff objects specifically to defendant's failure to locate Davis' passport file. Defendant has submitted ample documentation of the unsuccessful search efforts of the Passport Office.[9] An agency's search for FOIA documents need only be reasonable. *McGehee v. CIA,* 697 F.2d at 1100; *Founding Church of Scientology v. NSA,* 610 F.2d at 837; *Goland v. CIA,* 607 F.2d at 353. Based on the thoroughness of the searches conducted as evidenced by the detailed affidavits discussed herein, it is determined that the Department of State's search was indeed adequate and it therefore appears that summary judgment should be granted in its favor.

## II. Immigration and Naturalization Service

### A. Civil Action No. 80–1056

■ By letter dated March 9, 1978 plaintiff requested access to all records, includ-

---

**5.** Complaint, *Shaw v. Department of State,* Exh. E.

**6.** *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**7.** Opposition to defendants' motions for summary judgment, January 16, 1981, at 22.

**8.** "A requester is not permitted to alter or refine the *subjects* to which he originally directed attention." *McGehee v. CIA,* 697 F.2d at 1103.

**9.** Affidavit of Frank M. Machak, Exh. B.

ing photographs, pertaining to Jean Souetre, a/k/a Michael Roux, a/k/a Michael Hertz.[10] Attached to his request was a copy of a CIA document previously released to plaintiff providing background information on Souetre.[11] Defendant responded that no records could be located and more identifying data would be required.[12] Plaintiff learned that Souetre was born October 15, 1930 in the Gironde area of France and forwarded that information to defendant on December 4, 1978.[13] On April 11, 1979 defendant informed plaintiff that it had been unable to locate any records responsive to his requests. One record was found for one of the aliases but did not match the date and place of birth provided by plaintiff. INS invoked Exemption (b)(7)(C) of the FOIA to deny access to that record, as the disclosure would constitute a "clear and unwarranted invasion of privacy." [14] The Court has inspected this document *in camera* and has verified that defendant's assessment is correct. Another document pertaining to that individual was subsequently located and produced for *in camera* inspection but it, too, upon review fails to coincide with the information provided by plaintiff.

Accompanying defendant's motion and in support thereof is the affidavit of William J. Chambers, District Director of the Dallas, Texas District Office of the United States Immigration and Naturalization Service, which recounts the history and contents of communications between the plaintiff and defendant as described above, and the affidavit of Cecil G. Christian, Chief, Records Administration and Information Branch of the United States Immigration and Naturalization Service,[15] which describes the process of retrieving and locating files in the automated index and manually.

Defendant has moved for summary judgment on the basis that a thorough search produced no records responsive to plaintiff's request. Plaintiff opposes this motion, alleging the inadequacy of defendant's search in view of Mertz's trips to the United States, Roux's naturalization in 1970 and a possible investigation of Davis for loss of citizenship. However, plaintiff's request to INS was for records pertaining to Souetre, a/k/a Hertz, a/k/a Roux. Davis was not a subject of any request to INS in this action, and although INS apparently conducted a search for records pertaining to Mertz,[16] plaintiff never initiated that search, according to the documentation before the Court. The Christian affidavit explains that an additional microfilm search for the period 1940–60 could be performed but that would take one person approximately three days. Considering that the automated records have been searched and that the microfilm records have been searched from 1960 forward, it is determined that defendant's search meets the test of reasonableness and that therefore summary judgment is likewise appropriate as to it. The sufficiency of the agency's identification or retrieval process is not genuinely in issue here. *See* cases cited at 1057, *supra.*

### B. Civil Action No. 81–0942

By letters of various dates in 1980 addressed to the INS Regional and District Offices plaintiff Fensterwald requested records relating to Michael Victor Mertz, born in the Moselle area of France, *circa* 1921; Jean Rene Souetre, born in the Gironde area of France, *circa* 1930; and Michael Roux, date of place of birth unknown.[17] Twenty-six of the 29 offices responded that they conducted as thorough a search as was

---

**10.** Complaint, *Shaw v. Department of State,* Exh. JJ.

**11.** *Id.* Exh. KK.

**12.** *Id.* Exh. MM.

**13.** *Id.* Exh. NN.

**14.** *Id.* Exh. QQ.

**15.** Attachment 9 to defendants' reply to plaintiff's opposition to motions for summary judgment, March 13, 1981.

**16.** *See* Affidavit of Cecil H. Christian.

**17.** Declaration of James H. Walker, INS Acting Associate Commissioner for Management, Exh. A.

possible given the limited information provided by plaintiff but were unable to locate any records relating to the subjects of his request. The remaining offices requested additional information.[18] Although the INS Central Office in Washington, D.C. had not received a similar request it nevertheless conducted a search of its Master Index, its Intelligence Index and its Top Priority Program Index for records pertaining to Mertz, Souetre and Roux but none were discovered. The Central Office then wired all INS Districts and Field Offices to conduct a similar search and again no responsive records were located.[19] INS has moved for summary judgment in *Fensterwald* based upon its failure to locate any responsive records. Plaintiff's concern [20] is whether the few records INS has produced *in camera* pertain to his request. Since the Court has determined that they do not, summary judgment shall be granted in favor of INS in *Fensterwald.*

### III. Drug Enforcement Administration

Civil Action No. 81–0942 [21]

■ By letter dated March 14, 1980 explaining his interest in pursuing the investigation of the assassination of President Kennedy, and his belief that Mertz was involved in the drug trade, plaintiff Fensterwald requested records maintained by DEA Headquarters, Washington, D.C., regarding Michael Victor Mertz and Rene Souetre during the year 1963.[22] By letter dated April 28, 1980 plaintiff requested records maintained by DEA District or Field Offices regarding Jean Rene Souetre, Michael Victor Mertz and Michael Roux.[23]

DEA advised plaintiff by letter dated September 24, 1980, that unless the information sought on third parties is in the public domain plaintiff would need to obtain notarized releases from the subjects of his request before any records could be made available to him.[24] Plaintiff appealed that decision. On April 13, 1981 the Office of Privacy and Information Appeals informed plaintiff that DEA maintained no records indexed to any of the three names that pertain to the Kennedy assassination, nor had DEA identified any records on these individuals for the period 1962–64.[25] In accordance with established DEA policy (which plaintiff questions) the requests directed to the Field Offices were handled as part of the request directed to DEA Headquarters, since duplicates of documents which exist at the Field Offices are maintained there in a centralized record keeping system.[26] DEA final determinations with respect to FOIA requests are based on the composite of all material responsive to a

18. *Id.* at 1.

19. *Id.* at 2. The same records produced *in camera* in *Shaw* relating to one of the aliases but with a different date and place of birth were also discovered in response to plaintiff Fensterwald's search. An additional document indexed under a similar name was located by an INS District Office and submitted for an *in camera* determination that it was not responsive to plaintiff's requests.

20. In his declaration in support of his opposition to defendant's motion for summary judgment, plaintiff maintains that INS should have certain records on the subjects of his request. Yet, based upon the Walker declaration the Court determines that the INS search in *Fensterwald* was indeed adequate. *See* cases cited at 1057, *supra.*

21. Withheld documents which originated with DEA but were located by the CIA are discussed in that section of this memorandum.

22. Affidavit of DEA Special Agent James P. Collier, August 10, 1981, Exh. A.

23. Supplemental Affidavit of James P. Collier, October 9, 1981.

24. Affidavit of James P. Collier, August 10, 1981, Exh. C. Despite plaintiff's objection to this approach, it has been consistently upheld. *See Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 863 (D.C.Cir. 1981); *Baez v. United States Department of Justice,* 647 F.2d 1328, 1338–39 (D.C.Cir.1980); *Blakey v. United States Department of Justice,* 549 F.Supp. 362, 365–66 (D.D.C.1982).

25. *Id.* Exh. F.

26. Supplemental Affidavit of James P. Collier, at 2.

request, possessed by DEA and verified through inquiries to the Field Offices.[27]

DEA conducted additional searches but each failed to produce documents which originated during the period established in plaintiff's request.[28] Also, three FOIA specialists manually reviewed all identifiable file references to the subject of plaintiff's request but discovered no references to the Kennedy assassination.[29]

Plaintiff's principal objection to the DEA search is that he never intended his request to be limited to records which originated during the years 1962–64.[30] In response to that objection, as a matter of discretion, DEA undertook an additional search.[31] DEA requested 15 domestic and foreign offices to conduct a complete file search for records pertaining to each of the subjects for the time period 1962–1978. The offices were instructed to search the Narcotics and Dangerous Drug Information System and any existing manual file card indices.[32] DEA does have file references to one or more of the subjects of plaintiff's request but they relate only to the investigation of illicit narcotic traffic and not at all to the Kennedy assassination.[33] Although plaintiff claims his request is not limited to information relating to the Kennedy assassination, as originally worded and as characterized in his administrative appeal, it conveys no other meaning.[34] The three Collier affidavits describe DEA's search in detail and convince the Court of its adequacy.

### IV. Federal Bureau of Investigation

### A. Adequacy of the Search

**27.** *Id.*

**28.** Affidavit of James P. Collier, August 10, 1981 at 3.

**29.** *Id.*

**30.** Fensterwald Declaration at 2.

**31.** Second Supplemental Affidavit of James P. Collier, December 15, 1981.

**32.** *Id.*

**33.** *Id.*

### 1. Civil Action No. 80–1056

The history of communications between plaintiff and defendant may be summarized as follows:

a. By letter dated December 22, 1977 plaintiff requested a report of an interview of Dr. Lawrence M. Alderson by FBI Agent Frank Rooks concerning Jean Souetre, a/k/a Michal Roux, a/k/a Michal Hertz as well as previous and subsequent investigations regarding Souetre.[35]

b. On March 9, 1978 plaintiff requested all records, information and photographs pertaining to Jean Souetre, a/k/a Michal Roux, a/k/a Michal Hertz.[36]

c. On May 17, 1978 plaintiff was advised that documents relating to the subject of his request had been located.[37]

d. By letter dated June 29, 1978 plaintiff was notified that the FBI had discovered a document which originated with another government agency and had referred it to that agency for a determination of its releasability. Plaintiff was also advised that the Privacy Act prohibits the release of personal information concerning a living person without that individual's written authorization.[38]

e. In reference to defendant's June 29, 1978 letter plaintiff advised in a letter dated July 5, 1978 that he sought only those records pertaining to the investigation of Souetre's "alleged participation in the events surrounding the death of President Kennedy" which should be open to the general public.[39]

**34.** Affidavit of James P. Collier, August 10, 1981, Exh. A, Exh. D.

**35.** Complaint, *Shaw v. Department of State,* Exh. F.

**36.** Affidavit of FBI Special Agent John N. Phillips, September 30, 1980, Exh. D.

**37.** *Id.* Exh. G.

**38.** *Id.* Exh. H.

**39.** *Id.* Exh. I.

f. By FBI letter dated September 19, 1978, plaintiff was again advised of a referral to another government agency and that written authorization from the subject of his request would be required prior to release.[40]

g. Plaintiff provided a notarized signature of Dr. Alderson permitting release of material concerning him to J. Gary Shaw only,[41] and a copy of the interview with Dr. Alderson was released to plaintiff without excisions by letter dated April 16, 1979.[42]

h. On April 20, 1979 plaintiff requested access to all records relating to Michael Victor Mertz and Christian David.[43]

i. In response to plaintiff's request defendant advised, by letter dated June 19, 1979, that notarized signatures from Michael Mertz and Christian David were required before processing could be completed and the plaintiff could appeal this determination if he was dissatisfied.[44]

j. Plaintiff appealed by letter dated June 25, 1979 to the Associate Attorney General.[45]

k. In a letter dated January 14, 1980 plaintiff was informed that the initial action in his case would be affirmed with two modifications. Plaintiff would receive documents pertaining to the entry of David into this country. As to Mertz one record appearing in the Kennedy assassination file would be referred to the CIA for consultation pursuant to plaintiff's request for records on Souetre. Exemption (b)(7)(C) of the FOIA was invoked to deny access to additional documents.[46]

l. On September 9, 1980 plaintiff was provided some material concerning Souetre. Other material was withheld pursuant to 5 U.S.C. §§ 552(b)(1), (7)(C) and (7)(D).[47]

Claiming discovery is warranted, plaintiff objects to defendant's search as described in the Phillips affidavit for the failure to produce "tickler" copies and any pertinent documents which may exist in FBI Field Offices. As defendant's affidavit explains, "tickler" documents are merely duplicates which are destroyed after their purpose of temporary convenience has been served.[48] In addition, plaintiff did not specify originally any particular Field Office he wanted searched. He later filed separate requests with certain Field Offices but his complaint in this action failed to challenge the FBI's action with regard to those later requests. A reasonable description of the desired materials must include the location of the search. 28 C.F.R. § 16.3(b). *Marks v. United States Department of Justice,* 578 F.2d 261, 263 (9th Cir.1978). Field Offices need only be searched if specifically mentioned. 28 C.F.R. § 16.57(c). Both of the Phillips affidavits in *Shaw* amply detail the nature and scope of the search performed in response to plaintiff's request. Without a doubt that search was legally sufficient. *See Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir.1982).

## 2. Civil Action No. 81–0942

By letter dated on or about April 29, 1980 addressed to all FBI Field Offices and to Legal Attaches (Legats) in Paris, Bonn, London, Rome and Bern plaintiff requested FBI records pertaining to Michael Victor Mertz, Jean Rene Souetre and Michael Roux.[49] A short time after the filing of this complaint the FBI released material from the five Field Offices which had records responsive to plaintiff's request, with

---

**40.** *Id.* Exh. K.

**41.** *Id.* Exh. L.

**42.** *Id.* Exh. M. Complaint, *Shaw v. Department of State,* Exh. H.

**43.** Affidavit of John N. Phillips, Exh. N.

**44.** *Id.* Exh. P.

**45.** *Id.* Exh. Q.

**46.** *Id.* Exh. S.

**47.** *Id.* Exh. X.

**48.** Supplemental Affidavit of FBI Special Agent John N. Phillips, March 11, 1981, at 3.

**49.** Affidavit of FBI Special Agent John N. Phillips, October 1, 1981, at 2.

deletions pursuant to Exemptions (b)(1), (b)(7)(C), and (b)(7)(D).[50] Plaintiff was further advised that the Legats had not discovered any responsive documents.[51]

Plaintiff complains that the FBI has not made a complete search of the Field Offices and the Legats and also that the FBI has narrowed its search request unduly. The Phillips affidavit clearly indicates that all of the Field Office record systems were thoroughly and adequately searched as well as those maintained by the Legats, in accordance with the customary procedures for all materials concerning the subjects of plaintiff's requests and not just those pertaining to the Kennedy assassination.

Documents which originated with other agencies were referred by the FBI in two instances. Plaintiff maintains that so long as these documents are unaccounted for the FBI has not complied with his request. However, the FBI has submitted supplemental materials which demonstrate that these two documents, one originating with the United States Customs Service and one with the CIA, have been made available to plaintiff with deletions.[52] The exemptions relied upon for those deletions are discussed in conjunction with the other withheld materials below.

## B. Exemptions

### 1. (b)(1)

Section 552(b)(1) allows an agency to withhold materials which are:

(A) Specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such an Executive Order.

5 U.S.C. § 552(b)(1) (1976).

■ The FBI materials withheld pursuant to this exemption have been classified under Executive Order No. 12,065. That order states that materials are to be classified as "Secret" if release of the information "reasonably could be expected to cause serious damage to the national security,"[53] and as "Confidential" if release of the information "reasonably could be expected to cause identifiable damage to the national security."[54] Executive Order No. 12,065 also provides that information may not be considered for classification unless it concerns one of seven enumerated categories, including "intelligence activities, sources or methods" and "foreign relations or foreign activities of the United States."[55] In its *de novo* review of an agency's classification decision the Court must determine "whether the information fits within one of the seven enumerated categories and whether unauthorized disclosure of the material reasonably could be expected to cause the requisite potential harm." *Baez v. United States Dep't of Justice,* 647 F.2d 1328, 1334 (D.C.Cir.1980). Unauthorized disclosure of foreign government information and any information which would reveal the identity of a confidential foreign source is presumed to cause identifiable damage to the national security and that information is automatically classifiable.[56] The records classified by the FBI in these cases contain foreign government information, information pertaining to intelligence activities sources or methods and information concerning the foreign relations or foreign activities of the United States.[57]

---

**50.** *Id.* Exh. F.

**51.** *Id.* Exh. H.

**52.** *See* Supplemental Affidavit of John N. Phillips, December 3, 1981 and Affidavit of Louis J. Dube, CIA Information Review Officer for the Directorate of Operations, December 11, 1981.

**53.** Executive Order No. 12,065, § 1–103, 3 C.F.R. 190, 191 (1979).

**54.** *Id.* § 1–104, 3 C.F.R. 190, 191 (1979).

**55.** *Id.* § 1–301, 3 C.F.R. 190, 193 (1979).

**56.** *Id.* § 1–303. *See* Affidavit of FBI Special Agent Jesse C. House, at 8.

**57.** *Id.* §§ 1–301(b), (c) and (d), 3 C.F.R. 190, 193 (1979).

The burden is on the agency to demonstrate proper classification, yet "substantial weight" must be given to the agency affidavits. *Id.* at 1335. Affidavits have been provided by Gary L. Stoops in *Shaw* and Jesse C. House in *Fensterwald,* FBI Special Agents with Top Secret Classification authority and responsibility for review of the classification status of FBI information under Executive Order No. 12,065, detailing at great length the type of harm that would result from the disclosure of the withheld materials. Both affidavits demonstrate the agency's compliance with the procedural requirements of Executive Order No. 12,065. The classified information withheld from plaintiffs was itemized, indexed and described document by document. All reasonably segregable material has been released. See Affidavit of Gary L. Stoops at 15–24; Affidavit of Jesse C. House at 19–27.

Plaintiffs argue that these affidavits are fatally defective because they indicate that the FBI failed to comply with Section 3–303 of Executive Order No. 12,065 and 28 C.F.R. § 17.37, which provides that in some cases the need to protect classified information may be outweighed by the public interest in disclosure of the information. However, the decision whether to balance these conflicting interests is committed solely to agency discretion. *See, e.g., National Catholic Reporter Publishing Co., et al. v. Federal Bureau of Investigation, et al.,* Civil Action No. 80–0585 (D.D.C. June 17, 1981) (and cases cited therein).

Plaintiff Shaw challenges Stoops' conclusion that no segregable non-exempt information has been withheld. For each document Stoops explains that a more detailed description could be expected to identify the harm being protected. *See Baez v. United States Dep't of Justice,* 647 F.2d at 1336; *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 482 (D.C.Cir.1980). *In camera* inspection confirms that disclosure of even certain numbers and classification markings in *classified* documents could reveal the very information in issue. *Cf. Allen v. Central Intelligence Agency,* 636 F.2d

1287, 1289 n. 11 (D.C.Cir.1980). "[E]ach individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *Gardels v. Central Intelligence Agency,* 689 F.2d 1100, 1106 (D.C.Cir.1982), quoting *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 149 (D.C.Cir.1980). Whether or not the Court personally agrees in full with the FBI's evaluation of the danger, "the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity and plausibility." *Gardels v. CIA,* 689 F.2d at 1105. The FBI has adequately demonstrated the applicability of Exemption (b)(1) to the materials for which it was invoked.

2. (b)(7)(C)

Section 552(b)(7)(C) permits the withholding of "investigatory records compiled for law enforcement purposes . . . to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1976). To determine the applicability of this exemption the Court must determine *de novo* whether the public interest in disclosure outweighs the privacy interest at stake. *Baez v. U.S. Dep't of Justice,* 647 F.2d at 1338; *Lesar v. U.S. Dep't of Justice,* 636 F.2d at 486; *Blakey v. U.S. Dep't of Justice,* 549 F.Supp. 362, 365 (D.D.C.1982).

Plaintiff Shaw contends that the earlier Phillips affidavit in support of nondisclosure is "largely speculative and selfserving," and that the type of information he seeks has already been disclosed in the FBI records published by the Warren Commission. Plaintiff Fensterwald argues that the FBI has applied an illegal *per se* rule to deny access to the names of FBI agents, other government employees and the names of those under investigation. Exemption (b)(7)(C) was asserted, as the Phillips affidavits thoroughly explain, to protect the identity and privacy of FBI Special Agents, including those responsible for investiga-

tions in criminal cases and cases involving national security, and to protect the identity and privacy of individuals other than the subjects of plaintiffs' requests who may be actual or potential subjects of investigation. Not discounting the historical importance of plaintiffs' work, the FBI reasonably concluded that access to the deleted information must be denied. *See generally Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 863 (D.C.Cir.1981).

3. (b)(7)(D)

■ Section 552(b)(7)(D) protects from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... disclose the identity of a confidential source and ... confidential information furnished only by the confidential source." 5 U.S.C. § 552(b)(7)(D) (1976). Unlike other FOIA exemptions, the applicability of Exemption 7(D)

> ... depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a "confidential source" during the course of a legitimate criminal law investigation. Once that question is answered in the affirmative, all such information obtained from the confidential source receives protection.

*Lesar v. U.S. Dep't of Justice,* 636 F.2d at 492 (footnotes omitted).

■ Here, the Phillips affidavits demonstrate that the exemption was asserted only where necessary to protect the identities of individuals who have provided information to the FBI under "at least an implied assurance of confidentiality". Effective criminal law enforcement depends upon the government's ability to encourage the cooperation of private citizens and local law enforcement agencies. This explanation is perfect-

ly acceptable to the Court, despite plaintiffs' particular objections, in view of the indices contained in the Phillips affidavits and the *in camera* review conducted. *See id.* at 490–92.

V. Central Intelligence Agency

Civil Action No. 80–1056

■ On March 9, 1978, plaintiff requested all records, information and photographs pertaining to Jean Souetre, a/k/a Michal Roux, a/k/a Michal Hertz.[58] On April 23, 1979, plaintiff requested access to all records relating to Thomas Eli Davis, III.[59] On May 8, 1979, plaintiff requested CIA records concerning Michael Victor Mertz and Christian David.[60] On August 31, 1979 plaintiff requested a copy of a photograph of "Captain Souetre."[61] By letter dated March 19, 1980, plaintiff's counsel appealed the constructive denial of all plaintiff's FOIA requests.[62]

The CIA located 207 records in response to plaintiff's requests. Thirty-two documents were found to have originated with the State Department. Twelve documents were found to have originated with the Drug Enforcement Agency and six from the United States Customs Service. All of the non-CIA documents were referred to their originating agencies for review for possible release to plaintiff.[63] No records were located concerning Davis. Neither was the requested photograph of Souetre.[64]

Plaintiff contends that disputed material facts concerning the adequacy of the search performed preclude summary judgment in favor of the CIA. The affidavit of John E. Bacon describes the various decentralized CIA records systems and the search techniques used to process FOIA requests. All available indices are reviewed to discover references to possibly responsive records. Any possibly responsive records are then

**58.** Affidavit of John E. Bacon, CIA Information and Privacy Coordinator, Exh. A.

**59.** *Id.* Exh. E.

**60.** *Id.* Exh. I.

**61.** *Id.* Exh. M.

**62.** *Id.* Exh. G.

**63.** *Id.* at 4.

**64.** *Id.* at 3.

retrieved and reviewed by the originating component to determine their releasability.[65] The CIA searches for records to meet its operational needs in the same way save for the determination of releasability.[66] Bacon was satisfied that in this instance "all logical systems were searched and that the search methods would have surfaced all reasonably responsive documents." [67] If any responsive documents were not retrieved it is because they were not indexed in the form of plaintiff's requests, and could only be located through a page by page search of all agency records.[68] Bacon's sworn affidavit is plainly adequate to demonstrate the thoroughness of the CIA's search for responsive documents and there is no reason to infer any bad faith. *See* cases cited at 6, *supra.*

Gerald L. Liebenau, CIA Information Review Officer for the Directorate of Operations, provided a lengthy and detailed affidavit, with a complete Document Disposition Index, explaining why certain information retrieved in response to plaintiff's request must be exempt from disclosure under the Act.[69] Although plaintiff doubts the accuracy of this affidavit as a *Vaughn* index it plainly complies with the requirements of such an index as set forth recently in *Church of Scientology of California, Inc. v. Turner,* 662 F.2d 784 (D.C.Cir.1980). To explain the withholdings from the agencies to which additional documents were referred, affidavits were submitted by Alfred G. Scholle, Acting Director, Office of Regulations and Rulings, United States Customs Service; James P. Collier, Drug Enforcement Administration Special Agent; and Thomas W. Ainsworth, Acting Deputy Assistant Secretary for the Classification/Declassification Center of the Department of State.

Effective intelligence operations depend upon the continued protection of information relating directly to the national security. The Liebenau affidavit explains that

> ... [t]he unintentional disclosure of secrets is frequently the consequence of piecemeal disclosures, many of which might have been individually innocent of real meaning, but which cumulatively may disclose the real secret.[70]

For this reason the agency's expert determination on releasability must be upheld where reasonable and plausible. *See American Jewish Congress v. Department of the Treasury,* 549 F.Supp. 1270, 1276 (D.D.C. 1982).

### Exemption (b)(1)

Like the FBI, the CIA invokes this exemption to protect foreign government information, information concerning intelligence activities, sources and methods, and information concerning foreign relations or foreign activities of the United States. The substantive requirements under this exemption for withholding properly classified information have been discussed above.

Plaintiff objects to the CIA's failure to conduct a balancing test pursuant to Section 3–303 of Executive Order No. 12,065 for each document withheld under this exemption, its failure to indicate the identity of the original classifier and the date of classification review, and its failure to release segregable non-exempt information, including but not limited to classification markings.

As previously noted, Section 3–303 does not mandate a declassification review. By its own terms that section only comes into play after a determination has been made that the material in question is properly classified. The propriety of the classification is not a material issue here. Liebenau

---

**65.** *Id.* at 6.

**66.** *Id.* at 5–6.

**67.** *Id.* at 7.

**68.** *Id.* at 7–8.

**69.** Plaintiff does not challenge the CIA's reliance upon Exemption (b)(5) in the case of one document nor its reliance upon Exemption (b)(7)(F) as evidenced by the affidavit of James P. Collier of December 2, 1980, to protect the safety of law enforcement personnel.

**70.** Affidavit of Gerald I. Liebenau, at 4.

attests that he has Top Secret original classification authority. Despite plaintiff's implications to the contrary, identification of the original classifier must be made only for documents which originated since the effective date of Executive Order No. 12,065. In any event, defendant has indicated that Liebenau certified the current classification of the documents as of December 2, 1980, pursuant to the criteria established by Executive Order No. 12,065.

FOIA requires only that "any reasonably segregable portion shall be provided to any person requesting such record after deletion of such portions which are exempt." 5 U.S.C. § 552(b) (1976). The Court finds that the agency has adequately demonstrated that no reasonably segregable non-exempt portions have been withheld. With respect to the classification markings on subsequently declassified materials, *Allen v. CIA,* 636 F.2d 1287, 1289 n. 11 (D.C.Cir. 1980), indicates that an agency may not excise these markings without providing a supporting statutory exemption. With respect to filing instructions and information markings defendant relies upon Exemption (b)(3) and 50 U.S.C. § 403(d)(3). Moreover, *Allen* should not be interpreted to require retroactive compliance from an agency which had prepared documents for release to plaintiff prior to the decision date in that case. Thus, on the basis of the affidavits and a sample *in camera* review it is determined that the materials withheld under Exemption (b)(1) are indeed exempt from release to plaintiff.

### Exemption (b)(3)

■ Section 552(b)(3) exempts from disclosure matters that are

specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishing particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3) (1976). Here, the CIA has withheld information pursuant to provisions of the National Security Act of 1947 and the Central Intelligence Agency Act of 1949, 50 U.S.C. §§ 403(d)(3) and 403g (1970). A proviso to § 403(d)(3) states that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403(d)(3) (1970). Section 403g provides that, "in order further to implement" this proviso, "the Agency shall be exempted from ... the provisions of any ... law which requires the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 403g (1970). It is well settled that CIA information that might reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods, withheld under these statutes,[71] is entitled to the protection of Exemption (b)(3) of the FOIA. *Gardels v. CIA,* 689 F.2d at 1103; *Military Audit Project v. Casey,* 656 F.2d at 737 n. 39; *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 147 (D.C.Cir.1980). In that sense Exemption (b)(3) is the functional equivalent of Exemption (b)(1). *McGehee v. CIA,* 697 F.2d at 1112.

■ Within the limited standard for *de novo* review the only relevant question is whether the affidavits evidence with satisfactory detail that the materials withheld could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods. *Halperin v. CIA,* 629 F.2d at 147. The Liebenau affidavit plausibly explains that the release of the withheld materials to plaintiff would reveal foreign government and individual intelligence sources, including security liaison services, covert CIA installations abroad, and cryptonyms and pseudonyms which protect intelligence sources and methods. It describes in a non-conclusory fashion the particularized harm sought to be prevented by the denial of access.

---

**71.** "The meaning of 'intelligence sources' in Section 403(d)(3) unambiguously encompasses all classes of persons and entities within the listing of Section 403g." *Sims v. Central Intelligence Agency,* 642 F.2d 562, 571 (D.C.Cir. 1980).

With the counteraffidavit of James H. Lesar, plaintiff challenges the assertion in the Liebenau affidavit that information which reveals the existence of a CIA station in a specific city or country abroad or which discloses the fact that the CIA conducts intelligence operations in any given country abroad. must also be withheld to protect against unauthorized disclosure. Lesar states that the existence of a CIA station in Mexico City was revealed in a book that was subjected to court-approved CIA censorship.[72] Yet, defendant maintains, and *in camera* inspection confirms, that "there are no documents in this litigation from which acknowledgement of a Mexico City Station in 1963 has been deleted." Reply to plaintiff's opposition to defendant's motion for summary judgment at 14. Accordingly, it is concluded that the CIA has met its burden on the Exemption (b)(3) claims.

### Exemption (b)(6)

 Section 552(b)(6) removes from coverage "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To justify non-disclosure under this provision the agency must first establish that the requested information is appropriately classified as a "personnel", "medical" or "similar" file. Second, it must demonstrate that release of the information would violate substantial privacy interests of those involved. Finally, the agency must show that the privacy interest is not outweighed by the public interest in disclosure. *Sims v. Central Intelligence Agency,* 642 F.2d 562, 572–73 (D.C.Cir.1980). *See also Department of Air Force v. Rose,* 425 U.S. 352, 373, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976).

 While information connected with a business or professional relationship does not qualify for the exemption, *Chicago Board of Trade v. Commodity Futures Trading Commission,* 627 F.2d 392, 399 (D.C.Cir.1980), information of a highly intimate nature such as marital status, legitimacy of children, alcoholic consumption and reputation, falls within the ambit of the exemption under the rubric "similar files". *Sims v. CIA,* 642 F.2d at 573–74. The Liebenau affidavit states that 11 documents were released with deletions for privacy because they contained intimate details concerning experiences of individuals other than the subjects of plaintiff's requests, such as being arrested on narcotics charges and interrogated by police organizations. Certainly the "reputation" of those individuals is impugned by public disclosure of those documents alleging their participation in or awareness of unlawful activity, and the information contained therein qualifies for exempt status. Contrary to plaintiff's assertion, the Act makes no exception for the privacy interests of those with criminal records or aliens. The withheld information is more than just "embarrassing." *See Department of Air Force v. Rose,* 425 U.S. at 375–377, 96 S.Ct. at 1605–07.

 Detailing the harm that would result from disclosure, the Liebenau affidavit also states that in each instance "the predictable damage to the individual's privacy, including the potential damage to the individual's reputation and livelihood was weighed and balanced against the benefit to the general public that would flow from the release of the information. In all cases ... the damage to the individual outweighed the benefit to the public."[73] Thus, the agency has also sustained its burden with respect to Exemption (b)(6).

### Exemptions (b)(7)(C) and (D)

 The CIA relies upon these exemptions, and the Ainsworth, Scholle, and Collier affidavits, to justify the withholding of materials it referred to State, the Customs Service and DEA. For the same reasons plaintiff objects to the FBI's assertion of these exemptions and to the CIA's assertion of Exemption (b)(6), plaintiff maintains that summary judgment on these claims cannot be sustained. These affidavits pro-

---

**72.** Affidavit of James H. Lesar at 5.

**73.** Affidavit of Gerald I. Liebenau at 17.

vide enough information to permit this Court to conclude that the materials were properly withheld. *See Baez v. United States Dep't of Justice,* 647 F.2d 1328 (D.C. Cir.1980); *Lesar v. United States Dep't of Justice,* 636 F.2d 472 (D.C.Cir.1980); and the discussion at 21–23, *supra.*

Having considered defendants' motions, plaintiffs' oppositions thereto, the supporting affidavits and the entire record herein, and based upon *in camera* review, it is, this 28th day of February, 1983, hereby

ORDERED, that defendants' motions shall be granted; and it is

FURTHER ORDERED that judgment shall be entered in favor of defendants the Department of State, the Federal Bureau of Investigation, the Central Intelligence Agency, Immigration and Naturalization Service, and the Department of Justice and against the plaintiffs Gary Shaw and Bernard Fensterwald, Jr.